Good morning, Your Honors. Aren't you just a... You joined them. I joined them. That's nice. Friendliness. Mr. Vragel. Thank you. Kurt Vragel for the appellants, petitioners, Nationwide Freight Service, leader of U.S. Messenger, and stock contracting. This is a challenge to the Illinois Commerce Commission's investigations of my three clients. Rates, routes, and service. This challenge is brought under 49 U.S.C. 14501, which is the federal motor carrier preemption statute. The Supreme Court rulings on this statute state, indicate that this is a broad preemption statute. It was intended to be broad. It was and some other regulation of motor carriers, both interstate motor carriers and intrastate motor carriers. As part of that preemption, the statute says that any, the enactment or enforcement of any rule or other activity of a, if I jumble that, I'm sorry, but any activity that relates to or has an effect on the rates, routes, or service, the prices, routes, or service of a motor carrier are preempted. Of course, Judge Halderman's opinion says that the plaintiffs have admitted that the documents demanded of them were sought for use in determining the extent of noncompliance with the ICC's license and insurance requirements. So what basis is there to believe that the ICC might be attempting to regulate or have an impact on your, on the plaintiff's rates, routes, services? The investigations themselves relate only to the transportation documents of our clients. None of the investigation concerns the areas that, sorry, I may have grammatically jumbled that, the investigations do not concern the areas which the Illinois Commerce Commission is allowed to regulate, namely insurance and safety. Safety regulation was moved away from the Illinois Commerce Commission by the legislature. What remains to the Illinois Commerce Commission... But forgive me, are you saying that you did not admit that the documents were demanded to determine the extent of any noncompliance with the license and insurance requirement? We're saying that it was an overly broad request and it was not directly related or even peripherally related to the area that the Illinois Commerce Commission was allowed to regulate. The Illinois Commerce Commission, we believe, is using this investigation as a pretext for economic regulation. Had they truly been concerned about the area that they were allowed to be concerned about, namely insurance... I understand you're suspicious about that, but I'm having trouble with the idea that you've actually shown that this is economic regulation and it's, in order for preemption to occur, it has to have a significant economic effect, doesn't it? It does not. It does not have to relate to or have an effect on. And that's why we quoted the Massachusetts. Significant economic effect. Not just any effect. It can't just touch on transportation. It may relate to or have an effect on. There's two prongs to this statute, to relate to or to have an effect on. And we admitted to the lower court, we cannot show, with any credibility, an effect on. But we don't have to do that. Let's go back to the effect on... When you're in this relate to, you're under the relate to... Does an insurance in some way relate to transportation? It does if the Illinois Commerce Commission had asked about it, which they did not. This was a pure case of economic regulation. Where are you going? What are you doing? What are you charging? That's what they were asking for in their investigation. Bills of lading, shipping manifests, carrier logs, etc., etc., etc. Not one word about what they could ask about, which is insurance. And going back to the relate to versus the effect on, if the first few Supreme Court cases had not acknowledged that there were two prongs, the first case, the airline cases, would have had large proceedings, similar to these hospital merger proceedings with the FTC, where you have thousands and thousands and thousands of pages of testimony and economic affidavits, etc., etc., that show what the specific effect on airline rates would be by virtue of what the airlines were advertising and what the Supreme Court ultimately said, this is barred because of the airline preemption statute, which is basically the same language as our motor carrier statute. If that were the case, the first Supreme Court cases would have said, we have to have a major proceeding here to show a specific effect. And similarly, the Massachusetts case that we cited, Coakley, rejected the idea that there has to be a showing of effect you can relate to, as long as it relates to. Then the question becomes the extent to which there is a relation to the transportation. Some things are obviously way out there and way peripheral. There are some labor law cases that say, look, this is way unrelated to transportation, and therefore we're not going to allow the preemption statute to prescribe the state's ability to regulate in that area. This is within that limit. This is within the limit where there's a clear relation to the rates, routes, and service of the motor carriers. And once the investigations relate to the rates, routes, and motor carriers, the question becomes whether the activities of the investigation with whatever penalties they're seeking, the investigation is preempted or not preempted. An item is preempted if it relates to, I'm running out of time here, if an item is preempted, if the state cannot show that it is related to one of the two areas, safety or insurance. Here, there wasn't a single request for anything about any of these carriers' insurance. We could make an offer of proof that shows that they did, in fact, have all the insurance. That's not on the record, in fairness to all the parties. But they did not have the certificates, right? They did not have, well, that's another fact issue as to when or when they did not have the certificates. But the fact is, the Illinois Commerce Commission never asked about insurance. Not one word about insurance. And that's the area that the Illinois Commerce Commission is allowed to regulate under the preemption statute. Thank you. Thank you. Hi, Mr. Berlo. Good morning, and may it please the Court. Illinois Assistant Attorney General Clifford Berlo on behalf of the defendants in this case. This case ultimately boils down to, it seems to me, a single dispositive question. And that is whether the Illinois certification statute, the licensing requirement, which requires essentially one thing, the annual submission of proof of adequate insurance coverage, is a financial responsibility regulation. Because if it is, then the licensing requirement is not to enforce it, cannot therefore be preempted by the FQAA. And the answer to that question is plainly yes. The way in which the state of Illinois enforces its insurance requirements is through this licensing requirement. And that fact, which I don't understand the plaintiffs to be seriously contesting, essentially reduces the plaintiffs to making, I think, three different arguments. First, they can say that trying to enforce insurance regulations through a licensing regime is itself preempted by the FQAA. Of course, that can't be right, because nothing in the text, the precedent, and certainly if you consider the legislative history surrounding the statute, suggests that Congress sought to micromanage the way in which states regulate insurance. Indeed, this is a ubiquitous form of insurance regulation. A trucking company, in this case, has to submit proof of insurance coverage. In exchange, it receives a license and it's allowed to operate on a state's roads. Second, they can argue, as I think they seem to place a little bit greater emphasis on here, that the documents requested aren't relevant to the enforcement of insurance. Of course, that can't be correct either, because it fundamentally misapprehends the way in which a licensing statute by its very nature works, and in particular, the Illinois statute. If you look at the Illinois statute, it says, every day in which you operated on an Illinois road without a license is itself a separate violation. The records that were requested here would tell the Illinois Commerce Commission how many times the plaintiffs operated on an Illinois road. Well, is operate defined as carrying loads, or if the truck is empty, is that operation, if it's a backhaul, a dead time? Judge Tenner, the short answer is I'm not sure the answer to your question if it involves both ways, whether it's the carrying of a load to the destination or the return without a load. But I do know that what it means is conducting the business of being a commercial trucking company while traveling over an Illinois road, and I think the breadth of that definition, I think, likely has been resolved through a rule that the commission, I'm just not familiar with off the top of my head. But that's not a backdoor to begin regulation of commercial transportation, is it? No, I don't think so, but even if it were, so long as you are doing it as a way of regulating insurance, it's permissible under the statute. I mean, if you look at the permissible for a state to regulate the prices, routes, and services of the transportation industry if it's doing it, if that effect is the result of insurance or safety regulation, which makes perfect sense. The way the statute is structured is that there's an overarching preemption principle that says you can't take actions that will improperly relate to, and I'll get to the meaning of that term in a moment, but that improperly relate to prices, routes, and services. But if you're doing it as part of an insurance or a safety regulation, those are exempted. So it seems to me that for the plaintiffs to draw out this world in which the state is able to have its insurance requirements and have its safety requirements, but it's not permitted to seek documents investigating noncompliance with those requirements. But from an insurance perspective, why does it matter whether Nationwide traveled 100 miles or 500 miles on any given day or what was in the load that they carried or what the value of the load was? It's an all-or-nothing thing in terms of that insurance requirement, isn't it? Well, yes, if they use the roads on that date and it doesn't matter these other details. It doesn't matter how much they use them on that given date or the contours of the trip or anything of that nature. No, and that's not why we're requesting these materials. I think if you look at the Supreme Court precedent here, it's really staked out that there are two polar opposite positions that are simply wrong. One is that laws of general application simply by virtue of the fact that they apply to the transportation industry are preempted wholesale, no matter what they are. The other is that the mere fact that a law applies to the transportation industry at all is not preempted so long as it doesn't reference the transportation industry. I think if you'd set those two extreme positions aside, we're left in something of a murky middle ground. And fortunately, I think the Supreme Court precedent and this Court's precedent provides at least some guidance on how to construe the nature of the relationship between the state regulation and prices, routes, and services. And I think if you look at the Morales case, you see where the Court said that regulating advertisement as to what prices are being promoted is impermissible. And at the same time, they said, albeit in dicta, that regulating advertising saying don't use obscene depictions is not going to be preempted. Now, why would one be inappropriate but the other would be fine? I think the answer is that the obscene depictions requirement doesn't care what prices you charge. It doesn't care what routes you travel. It doesn't care what services you provided. Promote those all you want. Charge whatever price you want. Just do it without making obscene depictions. The same thing's true here. These document requests don't care what prices you charge. They don't care what routes you traveled. And they don't really care what insurance requirement. I mean, I think if you want to divorce the document request from the insurance requirement itself, I don't think that's appropriate. But if you really want to divorce the two, it's still almost impossible to show that these document requests have the improper regulatory effect. But again, it does seem to me that the plaintiffs are asking the Court to draw this line here where we can have our insurance requirements. We just can't take reasonable steps to enforce them through administrative subpoenas. And I would challenge that that simply can't be correct. That simply can't be what Congress sought to do here. Are you aware of any other challenges to state licensing enforcement? No. The only one that I'm aware of is the Second Circuit decision we cited in our case, which was the Ace Auto Body and Towing case, where the Second Circuit said that a virtually carbon copy of this licensing requirement was so plainly related to insurance coverage that it didn't warrant further discussion. So it does seem to me that this is actually a fairly straightforward case. Now, the plaintiff has depicted the statute as saying it is preemptive. It's either related to or has an economic effect. I think if you look at the precedent, it has been clear all the way through that that related to language, which is in the statute, has been interpreted to mean having some sort of effect. And I think the Morales case is the leading authority on that. So, unless the Court has any further questions, I see that my time has expired. I just have one quick question. Certainly, Judge Tenney. Hopefully. Our recent S.C. Johnson case, do you think that changed our preemption test or was just a different way of articulating the test that we used in the all-over-the-world case? No. I think the S.C. Johnson case is consistent with the travel all-over-the-world case. I think it's consistent with Roe. I think it's consistent with Wollins. And I think it's consistent with Morales. What I think the Court emphasized in S.C. Johnson is that you need to look at the specific implications of the state tort to determine whether or not that particular tort is going to be preempted in a particular circumstance. And what I mean by that is you can have a result wherein travel all over the world, a tortious interference claim was not preempted, and then have a tortious interference claim preempted in United Airlines against Mesa Airlines, which is also from this Court. And the reason was, without getting into the details of those cases, that the travel all-over-the-world case, the tortious interference claim didn't cast doubt on the validity or the legitimacy of the service being provided, whereas in the United Airlines case it did. S.C. Johnson said you have to take these torts one at a time and determine whether it has the impermissible effect. Thank you. I thank you for that extra time. Thank you. I just urge the Court to refrain. Thank you. Well, you can have two minutes. I'll give you two minutes. Just a brief comment, which is that nowhere in this entire proceeding have our clients been accused of not having insurance. The original citations, which then led to the possibility of investigations for not having a permit, not for not having insurance, but for not having a permit. But the permit requires that you have insurance, correct? Like a driver's license. If you don't have insurance, you better not be driving. But other than that, there's a separate question of whether you have insurance and whether you've paid the fee to get licensed. Thank you. All right. The case will be taken under advisement.